# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:19-CR-00360-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| COLEMAN BOYD COCKRELL, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER is before the Court on Defendant's "Second Motion to Suppress Evidence from Vehicle," Doc. 54, filed on June 25, 2021. The Government's "Response to Defendant's Second Motion to Suppress Evidence from Vehicle," Doc. 56, was filed on June 30, 2021. The Court conducted an evidentiary hearing on July 14, 2021.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be <u>denied</u>, as discussed below.

## I. FACTUAL BACKGROUND AND FINDINGS

Defendant is charged in a Superseding Bill of Indictment with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846.

Defendant contends that Charlotte Mecklenburg Police Department (CMPD) officers lacked probable cause to make a warrantless arrest based upon information from a confidential informant (CI), and that evidence obtained from the arrest should be suppressed.

The Court heard testimony from Officer Appolon Jean-Paul of the CMPD. Jean-Paul has been a patrol officer for ten years. He has conducted at least 200 drug investigations and worked with twenty confidential informants. He has personally directed ten CIs. His investigation in this case began with information provided by a CI.

Jean-Paul developed this CI around May 1, 2019. Through the CI, he received information about a drug trafficking organization that included Johnny Wells, his daughter, Tonya Wells, Bobby Cannaday, and a man known as "Redd," later identified as Lawrence Brooks. On May 2, the CI conducted a controlled buy from Johnny Wells. Tonya Wells was a passenger in the car during the transaction. Johnny Wells, Tonya Wells, and Cannaday were later charged federally and pled guilty to methamphetamine trafficking. Brooks was also charged and is currently pending trial.

Jean-Paul also developed Defendant's name through the CI. The CI told him that he had personally observed Defendant selling drugs. The CI offered Jean-Paul information about Defendant and showed him Defendant's Facebook page to verify his name and photograph. Jean-Paul also saw posts on Defendant's social media where he made reference to fleeing from police officers at traffic stops. Upon further investigation, Jean-Paul discovered that Defendant had been convicted of federal firearm offenses in New Jersey and state firearm offenses in Florida. He also learned there was an outstanding Florida warrant for Defendant.[1]

---

[1] It was later determined that the warrant was non-extraditable.

On May 16, 2019, Jean-Paul began setting up a controlled buy from Defendant with the CI. On May 17, Jean-Paul and the CI confirmed around 10 a.m. that they would conduct a controlled buy later that day. Jean-Paul met with the CI in person later that afternoon, between 1 p.m. and 3 p.m. During that time, the CI exchanged about ten to fifteen Facebook messages with Defendant to set up the buy.[2] Jean-Paul directed what the CI was writing to Defendant and saw the messages exchanged in real time setting up the details of the buy, including the time and location. Defendant agreed to meet the CI immediately at a Shell gas station at 2624 Sam Wilson Road and sell him seven grams of methamphetamine for $140.

Jean-Paul and the CI waited in the parking lot at the gas station for about two hours before Defendant arrived. When Defendant's car arrived, the CI positively identified Defendant as the driver. Jean-Paul also positively identified Defendant based upon the Facebook profile the CI showed him. He notified the arrest team and gave them a description of Defendant's vehicle. CMPD officers arrived at the scene in a marked police car and an unmarked van, blocking Defendant's car from the front and driver's side. Officers used a baseball bat to break into Defendant's car due to concerns over whether he was armed and the possibility of flight, based upon his past firearms convictions and social media posts about fleeing from police.

Defendant was removed from the car and arrested. Tonya Wells was in the passenger seat at the time of the arrest. Officers located a black backpack in Defendant's car containing 119 grams of methamphetamine, $1777, a scale, and baggies. They also found an additional four grams of methamphetamine on Tonya Wells' person.

## II. ANALYSIS

---

[2] The messages were later deleted.

"It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime." United States v. Dickey–Bey, 393 F.3d 449, 453–54 (4th Cir. 2004) (citations omitted). Probable cause to justify an arrest exists where "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (listing cases); see also Dickey–Bey, 393 F.3d at 453. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 230-32 (1983). Probable cause is an objective test which requires the court to examine the facts within the knowledge of the arresting officers to determine whether those facts establish a probability upon which a reasonable and prudent person would act. United States v. Gray, 137 F.3d 765, 770 (4th Cir. 1998). Courts give deference to the experience of law enforcement officers at the scene of the arrest. See Ornelas v. United States, 517 U.S. 690, 699 (1996). The Supreme Court has recognized that trained law enforcement officers may draw inferences and make deductions that "might well elude an untrained person." United States v. Cortez, 449 U.S. 411, 418 (1981); see also United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).

Information from informants has been found to establish or contribute to the probable cause necessary to justify a warrantless arrest. See, e.g., Gates, 462 U.S. at 238-41; United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991); United States v. Shepherd, 714 F.2d 316, 317 (4th Cir. 1983). To assess whether an officer acting on an informant's tip has probable cause to arrest,

courts "look to the 'totality of the circumstances' surrounding the information available to the officer." Miller, 925 F.2d at 698 (4th Cir. 1991) (quoting Gates, 462 U.S. 213). Under this approach, factors such as an informant's "veracity, reliability, and basis of knowledge are highly relevant," see Miller, 925 F.2d at 699, and "a deficiency in one may be compensated for . . . by a strong showing as to the other." Gates, 462 U.S. at 233. Courts consider the officer's prior experience with the informant and the degree to which the officer corroborated the informant's information to determine whether an informant is reliable. See United States v. Shepherd, 714 F.2d 316, 317 (4th Cir. 1983) (officer's prior experience with informant); Miller, 925 F.2d at 698 (corroboration). Officers can corroborate an informant's information by "observing a substantial portion of what the informant's tip had said they would see, thereby creating a reasonable conclusion that the other information supplied by the informant . . . was correct." Miller, 925 F.2d at 699. Corroboration of "innocent facts" can also be sufficient to establish probable cause based upon an informant's tip. See United States v. Lalor, 996 F.2d 1578, 1581 (4th Cir. 1993) ("corroboration of apparently innocent details of an informant's report tends to indicate other aspects of the report are also correct.").

The facts here are comparable to those in United States v. Miller, where there was probable cause to arrest the defendant when the officer corroborated an informant's tip by (1) showing the informant a photo of the defendant, from which the informant confirmed the defendant's identity, and (2) observing the activity the informant described, that the defendant would be transporting a shipment of drugs on a bus either "Wednesday or Thursday of that same week" and that the defendant would be wearing blue jeans, a blouse, and a brown tote bag with a shoulder strap. Miller, 925 F.2d at 697-99. The court also noted that the officer had previously arrested the

defendant on drug charges, which further indicated the informant's tip was reliable. Miller, 925 F.2d at 699.

The Court finds that the totality of the circumstances establish the officers here had probable cause to believe Defendant was committing a felony drug offense. There is ample evidence that points to the CI's reliability. The CI had first hand knowledge from observing Defendant selling drugs. Second, Jean-Paul had prior experience with the CI where he provided him with accurate information about the drug trafficking organization including Johnny Wells, Tonya Wells, Bobby Cannaday, and Lawrence Brooks. Third, Jean-Paul corroborated the CI's information about Defendant through his own observations and investigation.

He corroborated innocent facts from the CI's report by observing Defendant's Facebook profile, which displayed his name and photograph. Next, he investigated Defendant and learned of his prior convictions and Florida warrant, which further indicated the CI's information that Defendant was trafficking drugs was reliable. He further corroborated the CI's information by watching the Facebook Messenger exchange where the CI and Defendant set up the drug buy in real time, detailing the time, location, price, and quantity of drugs to be sold. These facts are stronger than Miller, where the officer observed the activity the informant predicted but did not see any real-time communication between the defendant and the CI.

As in Miller, Jean-Paul also observed the drug buy that the CI set up with Defendant. Jean-Paul and the officers at the scene observed a car driving up to the Shell station specified in the Facebook messages within the expected time frame. Jean-Paul and the CI both confirmed that Defendant was driving the car. In examining the totality of the circumstances, the CI's reliability and basis of knowledge, along with the officer's corroboration of the CI's information, are sufficient to establish probable cause for Defendant's warrantless arrest.

In addition to the reliable information from the CI, officers at the scene knew Defendant expressed willingness to flee from police on social media and that he had prior firearms convictions. They also had a good faith belief that Defendant had an outstanding warrant from Florida. Based upon the facts within the knowledge of the officers at the time of the arrest, it is clear that a reasonable and prudent officer would conclude there was probable cause to arrest Defendant.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Second Motion to Suppress Evidence from Vehicle," Doc. 54, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: August 4, 2021

*David S. Cayer*
United States Magistrate Judge